1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7   C.R. JOHNSON COMPANY, INC., KIMCO    )
    GROUP, LLC and CHARLES R. JOHNSON    )      NO.  CV-04-3104-LRS
    and KIM M. JOHNSON, husband and      )
8   wife,                                )      ORDER GRANTING DEFENDANT'S
                                         )      MOTION FOR SUMMARY JUDGMENT
9              Plaintiffs,               )
                                         )
10       v.                              )
                                         )
11  CITY OF SELAH,                       )
                                         )
12             Defendant.                )
                                         )

13

14       BEFORE THE COURT is Defendant City of Selah's Motion For Summary

15  Judgment (Ct. Rec. 31).  A hearing was held February 3, 2006.  Michael

16  Tierney  participated  on  behalf  of  the  Defendant;  Alan  Middleton

17  participated on behalf of Plaintiffs.

18       The  facts  important  to  resolution  of  the  issue  at  hand  are  not

19  seriously disputed, and will only be abbreviated herein.  The subject

20  property,  phases  3,  4  and  5  of  the  plat  entitled  Charles  Johnson  Plat

21  number 4, was first proposed for development in 1995 by the owner at the

22  time, Plaintiff C.R. Johnson Company.  The initial proposal anticipated

23  the development would go forward in five phases, but Plaintiff

24  C.R.  Johnson  Company  withdrew  phases  3,  4,  and  5  from  the  application

25  process.  Consequently, only phases 1 and 2 were approved for development

26  in 1995.   In 1999, Plaintiff C.R. Johnson Company began the approval

    process for phases 3, 4, and 5.  The proposal went through the first step

    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1   of the process and received a recommendation for approval from Defendant's

2   planning commission.   The proposal, in the form of an application for

3   preliminary plat approval, however, never went to the next step (City

4   Council approval) because of the higher-elevation development moratorium[1]

5   enacted by Selah in 1999.

6       Plaintiff C.R. Johnson Company reapplied for preliminary plat

7   approval for phases 3,4 and 5 in 2001.   The 2001 application was denied

8   by City Council on July 13, 2001 based upon Defendant Selah's policy

9   against use of booster pumps.   Following the action of the City Council

10  in 2001, Plaintiff Charles Johnson was apparently advised to reapply in

11  approximately eighteen  months when a new reservoir was expected to be

12  complete.

13      In approximately October 2002, Plaintiff C.R. Johnson Company

14  transferred its interest in the subject property to Plaintiff Kimco Group,

15  LLC ("Kimco").   In 2004, Kimco applied for preliminary plat approval of

16  the subject property.  On May 26, 2004, the report prepared by Defendant's

17  staff recommended against approval due to the proposal's reliance on the

18  preexisting Heritage Hills booster pump for its water supply.  Defendant's

19  2000 Comprehensive Water Plan made a determination that the Heritage Hills

20  booster pump was sized to accommodate only the 76 connections planned for

21

22      [1] Defendant Selah has a varying topography which affects the water
    system and has had past problems with booster pumps and water pressure.
23  Prior to 2004, Defendant had two constant pressure booster pumps in
    operation: the Goodlander Heights pump and the Heritage Hills pump. Due
24  to well-documented difficulties with both booster pumps, Defendant
    enacted a moratorium in 1999 on all new subdivisions and made findings
25  that rapid growth had exhausted its reserve storage capacity and that a
    public emergency existed.   The moratorium essentially precluded the use
26  of booster pumps on developments at higher elevations than could be
    served by gravity flow systems.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1  Heritage Hills, all of which had originally paid for and installed the

2  booster pump.  No appeals or other legal proceedings challenging the

3  actions of the City of Selah were filed thereafter until the late summer

4  of 2004.

5       On June 17, 2004, a public hearing was held regarding the 2004 Kimco

6  proposal.  On July 1, 2004, a hearing examiner issued a recommendation to

7  deny preliminary plat approval primarily because of the intention to use

8  Heritage Hills booster pump for its water supply.  On July 13, 2004, the

9  City Council considered the Kimco 2004 proposal at a closed record[2]

10 hearing.  The Kimco 2004 application for preliminary plat approval was

11 denied.  Kimco appealed the City Council's denial to Superior Court

12 pursuant to Washington's Land Use Procedures Act, R.C.W. 36.70C.  The

13 parties to that action then agreed to a stipulated remand from Superior

14 Court back to the City Council on August 16, 2004 to reconsider the denial

15 which had occurred in mid July 2004.  On August 24, 2004, City Council

16 approved the KIMCO application for preliminary plat approval, as set forth

17 in Resolution 1548.  The Resolution found that circumstances had changed

18 between the date of the findings by the hearing examiner and the date of

19 City Council's reconsideration.

20      The changed circumstances included final resolution of critical

21 issues in the Lookout Point reservoir project.  According to the

22 resolution document, Defendant had finalized the location of the storage

23 tank and transmission mains; obtained an easement for construction of the

24 new water tank on June 30, 2004; obtained a quit claim deed for the land

25

26      [2] The record consisted entirely of the record from the hearing on
   June 17, 2004.

   ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1 │ on which the water tank would be constructed; received issuance of a State

2 │ Environmental Policy Act (SEPA) preliminary Determination of non-

3 │ significance regarding the construction of the water tank on July 14,

4 │ 2004; and received issuance  of the final SEPA Determination of Non-

5 │ Significance for construction of the water tank.  The reservoir project

6 │ had finally advanced to become more of a concrete reality after dragging

7 │ on longer than expected due to difficulties obtaining easements and

8 │ finding an appropriate site for the storage tank. Plaintiffs filed this

9 │ suit on August 10, 2004 in state court, which suit was then removed to

10 │ this court on September 9, 2004.

11 │    The Court has thoroughly considered the oral and written arguments

12 │ of counsel, and now enters this order to memorialize and supplement the

13 │ oral rulings of the Court.

14 │    **IT IS ORDERED** that:

15 │    1.   Defendant's Motion for Summary Judgment (Ct. Rec. 31) is

16 │ **GRANTED**.

17 │    2.   The 42 U.S.C. §1983 Claim.  Plaintiff Kimco Group, LLC, the

18 │ property owner with standing during the relevant events not barred by the

19 │ three year statute of limitations, has failed to state a viable 42 U.S.C.

20 │ §1983 claim based on procedural or substantive due process or equal

21 │ protection grounds.  The court dismisses the 42 U.S.C. § 1983 claim.

22 │    3.   Federal Procedural Due Process Claim.  The procedure by which

23 │ Defendant denied or approved Plaintiff Kimco's preliminary plat

24 │ application provided adequate notice and an opportunity to be heard

25 │ sufficient to meet constitutional requirements, and no material issue of

26 │ fact is raised suggesting a different result.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1    4.   Federal Substantive Due Process Claim.  Because the Takings

2  Clause of the United States Constitution provides an explicit textual

3  source of federal constitutional protection against the type of conduct

4  alleged and challenged by the Plaintiffs, that clause preempts the

5  Plaintiffs' substantive due process claim under Federal law.  Even in the

6  absence of preemption, Defendant's actions were rationally related to a

7  legitimate state interest, did not deprive Plaintiff Kimco of a

8  particular constitutional guarantee, and are upheld against the

9  substantive due process challenge.

10    5.   Equal Rights Violation Claim.  Defendant's actions do not

11  involve a suspect classification or implicate a fundamental right.

12  Further, Defendant's actions bear a rational relation to a legitimate

13  state interest and survive constitutional scrutiny for the alleged equal

14  protection violation.  The undisputed facts show an ample rational basis

15  for Defendant's response to Kimco's 2004 preliminary plat application to

16  justify any differences between Defendant's response to other proposals.[3]

17    6.   R.C.W. 64.40 Claim.  The court exercises supplemental

18  jurisdiction over Plaintiffs' claim under R.C.W. 64.40 and finds that

19  only Plaintiff Kimco has standing to bring such claim based on property

20  ownership during the relevant thirty day time limitation pursuant to

21  R.C.W. 64.40.030.  The court further finds that Defendant's July 13, 2004

22  denial of Kimco's 2004 preliminary plat application was not an act that

23

24    [3] Plaintiff points to approval of the Orchard Hills subdivision in
2005 which calls for a booster pump system on some of the lots to be
developed therein.  However, the system approved for the development
25  involved a new multiple pump arrangement which will replace an existing
system with much greater efficiency, dramatic reductions in utility
26  costs, and elimination of the wasting of 258,000 gallons of water per
month.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1   was arbitrary, capricious, unlawful, or exceeded lawful authority within

2   the meaning of statute.   The court dismisses Plaintiffs' claim under

3   R.C.W. 64.40.

4        7.   The court acknowledges that under the "vested rights doctrine"

5   recognized in Washington, developers filing a timely and complete land

6   use application obtain a vested right to develop land in accordance with

7   the land use laws and regulations in effect at the time of application.

8   *Mission Springs, Inc. v. City of Spokane*,134 Wash.2d 947, 954 P.2d 250

9   (1998); *Vashon Island Comm. for Self-Gov't v. Boundary Review Bd.*, 127

10  Wash.2d 759, 767-68, 903 P.2d 953 (1995).   This case differs from the

11  Mission Springs case in several respects.   Phases 3, 4, and 5 of the

12  original 1995 application were never approved during the 1995 application

13  process.   The problems experienced by the City of Selah (inadequate water

14  supply for fire and domestic purposes, intermittent pump failure, lack

15  of dependability, inordinate maintenance, utility and manpower costs)

16  came to light by the time the 1999 application was initiated.   By

17  approving phases 1 and 2 of the original application, the City did

18  nothing to create a vested right concerning additional properties for

19  which the approval process was not pursued in 1995.   This is also true

20  of all City actions thereafter until the application was again submitted

21  for consideration in mid 2004.

22       Mere regulation on the use of land has never constituted a

23  "taking" or a violation of due process under federal or state law   .

24  *Presbytery of Seattle v. King County*, 114 Wash.2d 320, 327, 787 P.2d 907

25  (1990). The problem in any given case is to determine when such a

26  regulation exceeds constitutional bounds.   *Id.*  In order to determine

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

1    whether such a regulation would be unconstitutional either as a "taking"

2    or as a violation of substantive due process, it is necessary to follow

3    the proper tests for inverse condemnation and for substantive due process

4    violations due to excessive land use regulation.  *Id.*

5        *Substantive Due Process Under Washington Law* . Washington law

6    requires that the court apply the classic 3-prong due process test and

7    ask: (1) whether the regulation is aimed at achieving a legitimate public

8    purpose; (2) whether it uses means that are reasonably necessary to

9    achieve that purpose; and (3) whether it is unduly oppressive on the land

10   owner. *Id*. at 330 (citations omitted).[4]  Applying the facts of this case

11   to the three-prong test, the court finds no violation of substantive due

12   process. Under the first prong, Defendant's actions were aimed at

13   achieving a legitimate public purpose--adequate fire flow and drinking

14   water for its residents.  Under the second prong, plaintiffs' proposals

15   retained use of a preexisting booster pump system found by experience to

16   be inadequate.  The determination to preclude or limit use of such

17   systems at higher elevations was therefore not arbitrary or capricious.

18   Additionally, the forty-two day delay in receiving ultimate approval  in

19   2004 was not unreasonable.  Under the third prong, the moratorium was not

20   unduly oppressive because the scales tip in favor of the public's side

21

22   _____

23       [4] In dealing with the issue of "taking," the Washington Supreme
     Court in *Guimont v. Clarke*, 121 Wash.2d 586, 854 P.2d 1 (1993) retained
     the *Presbytery* analysis but changed the order of inquiry.  If the taking
24   did not destroy a fundamental attribute of ownership such as right to
     possess, to exclude others or to dispose of property, no unlawful taking
25   has occurred and the remaining prongs of the analysis need not be
     satisfied.  No attribute of ownership as set forth in *Guimont* has been
26   taken under the facts presented in this case.

     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1  and against the owner's side.[5]

2     Well-founded public health or safety concerns certainly may

3  supersede vested rights to development.   While experts on both sides of

4  the policy and technical issues involving restrictions on the use of

5  booster pumps may fairly arrive at opposing opinions, the City is not

6  required to adopt the developer's viewpoint where it rationally chooses

7  a different alternative, as it did in this case.   Further, Defendant

8  bears the responsibility of designing and maintaining a water system for

9  its residents and must carefully scrutinize any infrastructure built by

10 a developer that will ultimately become part of its water system. The

11 Court, therefore, dismisses the substantive due process claim under

12 Washington state law.

13     8.    Inverse Condemnation Claim.   The court exercises supplemental

14 jurisdiction over Plaintiffs' inverse condemnation claim, the thrust of

15 such claim being a public use taking based on Defendant's actions.   The

16 court finds the applicable statute of limitations is ten years under

17 Washington law and that Plaintiffs C.R. Johnson Company and Kimco have

18

19     [5] The *Presbytery* court listed several nonexclusive factors which
20 should be considered in determining if a regulation is unduly oppressive,
   such as the nature of the harm, the availability and effectiveness of
21 less drastic measures, and the economic loss suffered by the property
   owner. *Presbytery*, 114 Wash.2d at 331, 787 P.2d 907. Additional factors
22 involve consideration of both the public's interests and those of the
   regulated landowner, and include: On the public's side, the seriousness
23 of the public problem, the extent to which the owner's land contributes
   to it, the degree to which the proposed regulation solves it and the
24 feasibility of less oppressive solutions would all be relevant. On the
   owner's side, the amount and percentage of value loss, the extent of
25 remaining uses, past, present and future uses, temporary or permanent
   nature of the regulation, the extent to which the owner should have
26 anticipated such regulation and how feasible it is for the owner to alter
   present or currently planned uses. *Sintra, Inc. v. City of Seattle*, 119
   Wash.2d 1, 829 P.2d 765, 776-77(1992)(citations omitted).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

1  standing based on their property ownership during the relevant time

2  frame.   The court does not find that the elements of an inverse

3  condemnation claim are met under *Phillips v. King Cy.* , 136 Wn.2d 946,

4  957, 968 P.2d 871 (1998). The court finds an absence of damage that is

5  permanent or recurring or that involves a chronic or unreasonable pattern

6  of behavior by the Defendant government. See *Pruitt v. Douglas County*,

7  116 Wn.App. 547, 560, 66 P.3d 1111 (2003) (quoting   *Gaines v. Pierce*

8  *County*, 66 Wn.App. 715, 725-26, 834 P.2d 631 (1992)).   The Court

9  dismisses the inverse condemnation claim.

10      **IT IS SO ORDERED.**

11      The District Court Executive is directed to file this Order, enter

12  judgment in favor of the Defendant, and provide copies to counsel.

13      **DATED** this _10th___ day of February, 2006.

14                                         *s/ Lonny R. Suko*

15                                    LONNY R. SUKO
                                    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9